# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

PUREWORKS, INC.            )
                                )
      Plaintiff,          )
                                )
v.                          )       Case No. 3:09-cv-983
                                )
                                )       JUDGE HAYNES
BRADY CORPORATION, and   )
TRICOR DIRECT, INC.       )
                                )
      Defendants      )

## MEMORANDUM

Plaintiff PureWorks, Inc., a Delaware corporation headquartered in Franklin, Tennessee ("PureWorks"), filed its first amended complaint against Defendants[1] Brady Corporation, a Delaware corporation headquartered in Wisconsin ("Brady"), and Tricor Direct, Inc., a Delaware corporation and wholly-owned subsidiary of Brady with its principal place of business in Connecticut ("Tricor"), for trademark infringement under 15 U.S.C. § 1125(a)(1)(A), breach of contract, unjust enrichment, civil conspiracy, and joint enterprise / alter ego liability. (Docket Entry No. 53). In response, Brady filed a third party complaint against PureWorks for declaratory judgment of non-infringement under the Lanham Act and breach of contract. (Docket Entry No. 47).

Before the Court are Defendants Brady's and Tricor's joint motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Docket Entry No. 56), to which PureWorks responded (Docket Entry No. 64), and Defendants filed a reply (Docket Entry No. 67); and Plaintiff PureWorks' motion to

---

[1] In its first amended complaint, PureWorks amended its original complaint that named Brady, Tricor, and Brady Corporation, LTD, an United Kingdom corporation and wholly-owned subsidiary of Brady. The original complaint was substantially similar to the amended complaint and the documents attached to the original complaint have been incorporated by reference into the amended complaint.

1

dismiss under Fed. R. Civ. P. 12(b)(6) (Docket Entry No. 51), to which Brady responded (Docket Entry No. 58).

For the reasons set forth below, the Court concludes that Defendants' joint motion to dismiss should be granted in part as to PureWorks' claims for joint enterprise / alter ego and unjust enrichment claim against Brady, and denied in part as to PureWorks' claims for civil conspiracy, trademark infringement, unfair competition, and unjust enrichment claim against Tricor. Plaintiff PureWorks' motion to dismiss should be granted in part as to the declaratory judgment claim and denied in part as to the breach of contract claim.

## A. ANALYSIS OF MOTIONS

### PureWorks' First Amended Complaint

PureWorks' first amended complaint asserts federal subject matter jurisdiction under 28 U.S.C. § 1331, and alleges, in pertinent part:

> 6.     . . . PureWorks provides comprehensive, web-based software and information solutions that support compliance requirements, overall risk management needs, and the enhancement of governance and company culture through improved programs, processes, awareness, understanding, visibility, and accountability within workforce safety and health. Although PureWorks principally does business in North America, its operations are expanding, and it has done an increasing amount of business overseas, including in the United Kingdom.

> 7.     On July 4, 2000, PureWorks (through its predecessor in interest) became the owner of U.S. Trademark Reg. No. 2,364,645 for the mark, PURESAFETY®. PureWorks does business as "PureSafety," and it has consistently used its PURESAFETY® mark in connection with its products and services worldwide.

> *     *     *

> 10.     PureWorks has developed the industry's largest and highest quality library of interactive, engaging Flash®-based courses . . . and all such offerings are marketed and provided under the PURESAFETY® name.

2

11.    . . . PureWorks has international distributors and reseller partners in . . . Europe (including the United Kingdom) . . . reselling products and services under its PURESAFETY® mark.

*     *     *

13.    . . . PureWorks operates an Internet website found at the following domain: http://www.puresafety.com/. PureWorks has owned and operated this web domain since approximately July 1999 . . . [.]

14.    Brady, independently and through its subsidiaries and affiliated companies, is in the business of providing a wide variety of industrial products and services in manufacturing, precision engineering and materials and is a leading supplier to the Maintenance, Repair and Operations (MRO) market and to the Original Equipment Manufacturing (OEM) market . . . [.]

*     *     *

16.    In 2008, Brady approached PureWorks about the possibility of entering into a joint business venture . . . [and] the parties entered into a "Mutual Non-Disclosure Agreement" (hereinafter "the NDA") . . . [.]

17.    The NDA states, among other things, as follows:

    7.    Patent or Copyright Infringement. Nothing in this Agreement is intended to or shall grant any rights under any patent, copyright, trademark, trade secret or other intellectual property right of either party, nor shall this Agreement grant either party any rights in or to the other party's Confidential Information, except the limited right to review such Confidential Information in connection with the proposed Relationship between the parties. Further, both parties agree not to reverse engineer, attempt to reverse engineer, decompile or disassemble any computer software programs or devices supplied by the other party.

18.    . . . the parties did not reach an agreement to undertake a venture.

19.    On May 27, 2008, less than two months after the NDA was executed, Tricor filed an application with the United Kingdom Intellectual Property Office to register the term, "PURESAFETY", as a trademark in the United Kingdom. . . .

20.    . . . At no time prior to the negotiation of the NDA did the Defendants make any use of a trademark similar to PureWorks' PURESAFETY® mark.

21.    Subsequently . . . Brady and/or one or more of its subsidiaries or affiliated companies began operating a new online marketing website, prominently

3

displaying the PURESAFETY mark and specifically bearing the legend "©
Copyright 2008 PureSafety™ (a division of Brady Corporation Ltd)". . . [.]

22.      . . . the operator of the Site . . . is doing business as "PureSafety™," the
identical brand identifier as PureWorks' PURESAFETY® trademark.  As with
the Plaintiff, the operator of the website has marketed its products and services
using the term, "PureSafety," as one single word. As with the Plaintiff, the
operator of the website has capitalized the "P" and "S" in "PureSafety," with the
remaining letters in lower-case. As with the Plaintiff, the operator of the website
has used a different color for the letters "Pure" than the letters "Safety." The
operator of the website has also used a font for the term "PureSafety" that is very
similar to the font used by Plaintiff.

23.      The operator of the website has also sold products that overlap with
PureWorks' product offerings, using the PURESAFETY mark.

24.      Both of the Defendants were aware of PureWorks' PURESAFETY®
trademark before May 13, 2008.

25.      PureWorks has devoted considerable financial and human resources to
make use of its PURESAFETY® trademark in marketing efforts, including
building strong brand awareness and a positive brand image.

26.      There is similarity between the types of customers and potential customers
of the parties. By using PureWorks' "PURESAFETY" mark . . . the Defendants
have endeavored to unfairly capitalize from the goodwill associated with
PureWorks' mark and to mislead and/or confuse customers and potential
customers so as to misdirect them to the Defendants' business for commercial
purposes.

27.      PureWorks, for instance, has received inquiries from third parties who
were under the mistaken belief that PureWorks is the operator of the website . . .
Additionally, one or more of the Defendants have issued press releases using the
"PURESAFETY" name that are likely to confuse the public.

                              *        *        *

30.      PureWorks, through counsel, has demanded that the Defendants cease and
desist using the "PURESAFETY" name in any manner. The Defendants,
however, have declined to cease using the PURESAFETY name.

(Docket Entry No. 53).

For its claims, PureWorks' count one for trademark infringement alleges that Defendants

are using PureWorks' PURESAFETY® trademark in commerce in a manner that is likely to

4

cause confusion in violation of 15 U.S.C. § 1114. Count two for unfair competition alleges false

designation by Defendants in violation of 15 U.S.C. §1125(a)(1)(A). Count three for breach of

contract alleges that Brady breached the NDA by using PureWorks' PURESAFETY®

trademark, including through its affiliated companies.

Count four for civil conspiracy incorporates prior factual allegations and specifically

alleges that:

> 48. Each of the Defendants, acting in concert with one another, conspired to commit the unlawful acts alleged herein.

> 49. As a direct and proximate result of the Defendants' conduct . . . PureWorks has been damaged and is entitled to monetary damages and other relief.

(Docket Entry No. 53, at 10).

Count five for unjust enrichment seeks compensation for the reasonable value of the

benefits the Defendants received from the unauthorized use of PureWorks' PURESAFETY®

trademark.

Count six for alter ego liability incorporates prior factual allegations and specifically

alleges that:

> 55. Given its affiliation with Brady, Tricor is an agent of Brady and was acting as Brady's agent when committing the unlawful acts alleged herein. As such, each of the Defendants operated in a joint enterprise with one another.

> 56. As the parent company for Tricor, Brady was exercising complete dominion over its subsidiaries and was using such control to commit the wrongful acts alleged above, and PureWorks has been injured as a result.

> 57. The wrongful acts of each of the Defendants are imputed to the other, and each of the Defendants is jointly and severally liable to PureWorks.

(Docket Entry No. 53, at 11).

The documents referenced in the first amended complaint include (1) PureWorks' home page for http://www.puresafety.com/; (2) the NDA between Brady and PureWorks dated April 8, 2008; (3) the home page from a website bearing the legend "© Copyright 2008 PureSafety™ (a division of Brady Corporation Ltd)"; (4) Tricor's application to register the term "PURESAFETY" as a trademark in the United Kingdom; and (5) Brady Corporation F1Q09 Earnings Call Transcript.

## Brady's Amended Third Party Complaint

Brady's amended third party complaint asserts federal subject matter jurisdiction under 28 U.S.C. §§ 2201, 1331, and 1367, and alleges in pertinent part:

6.    Brady is a worldwide business entity that has sold products internationally since 1947. Brady's core capabilities in manufacturing, precision engineering and materials expertise make it a leading supplier to the Maintenance, Repair and Operations (MRO) market and to the Original Equipment Manufacturing (OEM) market . . .

7.    Brady, independently and through its subsidiaries has over 9000 employees around the world, with operations in 26 countries, and distributes its products in more than 100 countries through more than 4,400 distributor partners.

*        *        *

11.    As of March 11, 2010, PureSafety does not represent on its website that it engages in business worldwide or, specifically, in the United Kingdom.

12.    Brady does not, independently or through its subsidiaries, offer web-based training solutions or occupational and medical management software and information solutions under the name "PureSafety" or "PureWorks."

13.    PureSafety does not sell facility identification, safety and complementary products, wire identification products or people identification products.

14.    Brady's corporate website, www.bradycorporation.com, does not mention or contain any reference to "PureSafety."

15.    A search on any internet search engine using the term "puresafety" or "pure safety" will direct a user to one of the PureWorks's [sic] internet sites. A

6

search of those same terms will not yield any results that would direct a user to Brady's corporate website.

*    *    *

17.     In 2008, Brady and PureSafety engaged in discussions related to exploring the possibility of private branding of PureSafety's web-based training programs (the "Relationship"). In connection with the Relationship, the parties executed a Mutual Non-Disclosure Agreement . . . [.]

18.     Under § 2 of the Agreement, "Confidential Information" is defined as:

> … any information provided or prepared by either party (in either oral, written, or digital form) provided to, or obtained by the other party (including any director, officer, employee, agent, or representative), including but not limited to, that which relates to research, product plans, products, services, customers, markets, software, developments, inventions, processes, designs, drawings, data, knowhow, engineering, hardware configuration information, marketing or finances of the Disclosing Party.

19.     Under § 3 of the Agreement, the parties agreed to "not use or disclose any Confidential Information provided to it by or obtained from the other party for any reason including its own use or for any purpose except to carry out discussions concerning, and the undertaking of, the Relationship."

20.     Further, the parties agreed to take "all reasonable measures" to protect the secrecy of information exchanged in the Relationship and "avoid disclosure or use of Confidential Information of the other party in order to prevent it from falling into the public domain or the possession of persons other than those persons authorized under this Agreement . . . [.] "

21.     The parties further agreed, under § 8 of the Agreement, that the obligations of the Agreement survived termination of the Relationship.

22.     The parties also agreed, under § 10 of the Agreement, that the Agreement was intended to bind Brady and PureWorks/PureSafety throughout the United States and worldwide.

*    *    *

25.     No other entities were parties to the Agreement and no benefits or burdens of the Agreement were intended to impose obligations on unnamed third parties.

*    *    *

7

27.    Brady has not used or attempted to register the term "PureSafety."

28.    On May 27, 2008, Tricor Direct, Inc. ("Tricor") filed for registration of the mark "PureSafety" in the United Kingdom Trademark Office.   It was determined that there was no prior registration of the mark "PureSafety" in the United Kingdom.

29.    On May 13, 2008, Brady Corporation, Ltd. ("Brady U.K.") registered the domain name www.puresafety.co.uk.

30.    The domain name was not registered by Brady, nor is the site operated and maintained by Brady.

*      *      *

34.    After the current litigation was filed, an agent acting on behalf of PureWorks and at its direction contacted a subsidiary of Brady under false pretense and feigned confusion between PureWorks and the PureSafety business being operated in the United Kingdom . . . [.]

(Docket Entry No. 47).

For its claims, Brady's count one seeks a declaratory judgment of non-infringement of

the Lanham Act based upon Brady's own actions and another entity's actions relating to the

domain www.puresafety.co.uk, stating:

37.    Brady does not use the PureSafety mark in the United States for any purpose.

38.    Brady has not made any attempt to register "PureSafety" as a trademark in the United States.

39.    Brady has not made any attempt to register the domain www.puresafety.co.uk.

40.    . . . Brady does not use the "PureSafety" mark "in commerce" or in "connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." Thus, Brady has not infringed any mark registered by PureWorks.

(Docket Entry No. 47, at 6).

8

Count Two for breach of contract alleges that PureWorks violated the parties' NDA by disclosing confidential and proprietary information about Brady in certain provisions of the domain dispute litigation in the United Kingdom. Count Two asserts that "Brady will be irreparably harmed if PureWorks continues to disclose Confidential Information as much of this information would allow Brady's competitors insight into Brady's marketing plans and business development strategies." Id. at 7

Brady's amended third party complaint refers to the parties' NDA, communication by Frank Kelly, and paragraphs 17 and 19 to the U.K. domain dispute submission.

## B. CONCLUSIONS OF LAW

Consideration of a motion to dismiss requires the Court to accept the complaint's factual allegations as true and to construe the complaint liberally in favor of the plaintiff. Perry v. Am. Tobacco Co., Inc., 324 F.3d 845, 848 (6th Cir. 2003). Despite such liberal construction, a court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted). To survive a motion to dismiss under Rule 12(b)(6), "the complaint must contain 'either direct or inferential allegations respecting all the material elements'" of the claim. Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)). Indeed, "it is not . . . proper to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." Assoc. Gen. Contractors v. Cal. State Counsel of Carpenters, 459 U.S. 519, 526 (1983).

In Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the Supreme Court explained the requirements for sustaining a motion to dismiss under Fed. R. Civ. P.12(b)(6):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As

the Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. <u>Id.</u>, at 555 (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286, (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." <u>Id.</u>, at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Id.</u>, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u>, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. <u>Ibid</u>. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " <u>Id.</u>, at 557 (brackets omitted).

Two working principles underlie our decision in <u>Twombly</u>. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. <u>Id.</u>, at 555, . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. <u>Id.</u>, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 1949-1950.

As the Sixth Circuit stated, "[a] motion under rule 12(b)(6) is directed solely to a

complaint itself . . . [.]" <u>Sims v. Mercy Hosp.</u>, 451 F.2d 171, 173 (6th Cir. 1971). Thus, "when

deciding a motion to dismiss a court may consider only matters properly a part of the complaint or pleadings." <u>Armengau v. Cline</u>, No. 99-4544, 7 Fed. Appx. 336, 343 (6th Cir. March 1, 2001). The Sixth Circuit has taken a "liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." <u>Id.</u> at 344. "If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. At this preliminary stage in litigation, courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies ." <u>Id.</u> (citations omitted). Here, the Court has only considered those materials referenced in PureWorks' first amended complaint and Brady's amended third party complaint or central to those claims.

### 1. **Defendants' joint motion to dismiss PureWorks' complaint**

Brady and Tricor's joint motion seeks dismissal of the complaint based upon PureWorks' purported failure to allege adequately its claims for civil conspiracy, alter ego/ joint agency, Lanham Act, and unjust enrichment.

### a. **Civil conspiracy**

Under Tennessee law, "[t]he elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." <u>Kincaid v. SouthTrust Bank</u>, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (citing <u>Morgan v. Brush Wellman, Inc.</u>, 165 F. Supp. 2d 704, 720 (E.D. Tenn. 2001)). "Conspiracy claims must be pled with some degree of specificity." <u>Kincaid,</u> 221 S.W.3d at 38 (citations omitted).

"It is well settled in Tennessee that the tort of civil conspiracy requires underlying wrongful conduct, and that conspiracy, standing alone, is not sufficient to support a cause of

action. . . . If the underlying wrongful conduct is found to be not actionable then the conspiracy claim must also fail." Greene v. Brown & Williamson Tobacco Corp., 72 F. Supp. 2d 882, 887 (W.D. Tenn. 1999) (citations omitted). Yet, a predicate tort against another defendant can support a civil conspiracy claim without an underlying tort against that particular defendant. Boynton v. Headwaters, Inc., No. 2006-1471, 243 Fed. Appx. 610, 615-16 (Fed. Cir. July 27, 2007).

In Boynton, the plaintiffs alleged fraudulent acts against one defendant, who subsequently settled with the plaintiffs and was removed as a party from the case. Id. at 614. The plaintiffs also alleged a claim of civil conspiracy against other defendants, who argued that the lack of an underlying tort claim against them precluded any conspiracy claim. Id. On appeal, the Federal Circuit applied Tennessee law and found that despite the absence of an underlying tort against the remaining defendants, the underlying tort against the settling defendant allowed those plaintiffs' conspiracy claims to survive. Id. at 616. On remand, the District Court found that the plaintiffs' allegations established a genuine issue of material fact as to whether the remaining defendants had participated in an unlawful conspiracy. Boynton v. Headwaters, Inc., No. 02-1111-JPM, 2008 WL 4057835, at *5 (W.D. Tenn. Aug. 26, 2008).

Here, Brady and Tricor "challenge the sufficiency of the pleadings related to the conspiracy itself." (Docket Entry No. 57). Defendants contend that PureWorks has failed to allege concerted action and properly plead the predicate claim of trademark infringement. (Docket Entry Nos. 57 and 67). Defendants state:

> It is not enough for PureWorks to simply allege, to the extent their Amended Complaint can be so liberally construed, that Brady allowed an unnamed subsidiary to infringe the PureSafety mark . . . PureWorks must plead facts to plausibly demonstrate that Brady and Tricor took an affirmative act to cause, encourage, or aid in the commission of the alleged unlawful act. PureWorks

12

> Amended Complaint contains no such factual averments. Accordingly,
> PureWorks' claim for civil conspiracy should be dismissed.

(Docket Entry No. 57, at 7).

For its conspiracy claim, PureWorks cites the following factual allegations: (1) that Tricor and Brady LTD are wholly-owned subsidiaries of Brady, (2) that the Defendants knew of PureWorks' Puresaftey trademark prior to May 13, 2008, (3) that "acting with the knowledge and, at the very least inferentially, with the acquiescence and ratification of Brady,[2] Brady UK, Tricor, another of Brady's wholly-owned subsidiaries, and/or Brady itself," used PureWorks' trademark. (Docket Entry No. 64, at 4-5).

Applying the first prong of Iqbal, the Court concludes that the following legal conclusions are presented as facts:

- Each of the Defendants, acting in concert with one another, conspired to commit the unlawful acts alleged herein.

- As a direct and proximate result of the Defendants' conduct as described herein, PureWorks has been damaged and is entitled to monetary damages and other relief.

- Acting with the knowledge and, . . . acquiescence and ratification of Brady, Brady UK, Tricor, another of Brady's wholly-owned subsidiaries, and/or Brady itself, used the trademark.

These portions of the first amended complaint will be disregarded in the Court's plausibility analysis.

As to the second prong of Iqbal, whether the remaining well-pled facts present a plausible civil conspiracy claim, PureWorks remaining factual allegations for this claim are as follows: (1) Tricor and Brady LTD are wholly-owned subsidiaries of Brady; (2) Brady was aware of PureWorks' trademark; (3) Tricor filed an application to register the trademark,

---

[2] PureWorks states that Brady's knowledge is admitted, and its acquiescence and ratification can be inferred from the Earnings Call. (Docket Entry No. 64, at 5).

13

"PURESAFETY," in the United Kingdom; (4) Brady and/or one or more of its subsidiaries or affiliated companies began operating a new online marketing website, prominently displaying the PURESAFETY mark and specifically bearing the legend "© Copyright 2008 PureSafety™ (a division of Brady Corporation Ltd)"; (5) this mark was used in press releases; (6) the two trademarks are similar and there has been actual confusion; and (7) Brady's November 20, 2008 Earnings Call Transcript discusses the new trademark as follows:

> In parallel <u>we</u> successfully launched <u>our</u> new green branded Pure Safety which expands <u>our</u> existing health and safety solutions with an environmental product offering. Likewise our investment in E-business through a better website and increate in customer compact fire electronic media has resulted in a bigger share of revenue through these channels. These combined activities had an overall positive impact on that business.

(Docket Entry No. 53, Attachment 1) (emphasis added).

Assuming all these facts to be true and construing the first amended complaint liberally in PureWorks' favor as required on this motion, the Court concludes that PureWorks has asserted a plausible claim for civil conspiracy. PureWorks has also alleged the underlying torts of trademark infringement and unfair competition under the Lanham Act through the use of the PURESAFETY trademark on an online marketing website by "Brady and/or one or more of its subsidiaries or affiliated companies." Especially in light of the earnings call transcript cited above, the Court concludes that reasonable inferences exist that there was a plan between Brady and its wholly-owned subsidiaries to engage in alleged trademark infringement through the use of the PURESAFETY trademark. It is further plausible that these entities took concerted action to register and use the trademark on a marketing website and materials, with prior knowledge PureWorks' ownership and use of its trademark, and that PureWorks suffered injury. The Court concludes that there are "enough facts to state a claim to relief that is plausible on its face" for civil conspiracy and that PureWorks has "nudged [its] claim[] across the line from conceivable to

14

plausible." Twombly, 550 U.S. at 570.  Thus, Defendants' joint motion to dismiss the civil conspiracy claim should be denied.

## b. Joint Enterprise / Alter Ego

PureWorks' first amended complaint asserts a claim for "joint enterprise/alter ego/agency." Defendants contend that the alter ego claim should be dismissed because PureWorks' has not sufficiently pled an "equal right on the part of each to control both the venture as a whole and any relevant instrumentality."

In Tennessee, alter ego liability exists when a "corporate parent should be liable for its subsidiary's acts, that is, whether the subsidiary is a 'mere instrumentality of an individual or a parent corporation' and whether failure to disregard the form would result in an injustice." United States v. Carell, 681 F.Supp. 2d 874, 892 (M.D. Tenn. 2009) (citations omitted). Applying Tennessee law, the Sixth Circuit has stated that "'fraud or similar injustice' must be demonstrated in order to pierce the corporate veil." Southeast Texas Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 674 (6th Cir. 2006) (citation omitted) (emphasis in original). "'[T]he alter ego theory requires that the corporate structure cause fraud or similar injustice[;]' thus, '[m]ere dominion and control of the parent over the subsidiary [alone] will not support alter ego liability.'" Id. (quoting Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc., 685 A.2d 724, 729 (Del. Super. Ct. 1996)).  See also Carell, 681 F. Supp. 2d at 890.

In Tennessee, the  "elements necessary to establish a joint venture are set forth in Cecil v. Harden, 575 S.W.2d 268 (Tenn. 1978)[3] as: (1) a common purpose; (2) some manner of agreement among the parties to the joint venture; and (3) an equal right to control the venture

---

[3]  The Court notes that Cecil v. Harden, 575 S.W.2d 268 (Tenn. 1978) was superseded by statute as recognized in Biscan v. Brown, 160 S.W.3d 462 (Tenn. 2005).

15

and any relevant instrumentality." Phelps v. Bank of America, No. M2007-02135-COA-R3-CV, 2009 WL 690695, at *4 (Tenn. Ct. App. Mar. 13, 2009).

Applying the first prong of Iqbal, the Court concludes that the following legal conclusions are presented as factual allegations:

- Tricor is an agent of Brady and was acting as Brady's agent when committing the unlawful acts alleged herein. As such, each of the Defendants operated in a joint enterprise with one another.

- As the parent company for Tricor, Brady was exercising complete dominion over its subsidiaries and was using such control to commit the wrongful acts alleged above, and PureWorks has been injured as a result.

- The wrongful acts of each of the Defendants are imputed to the other, and each of the Defendants is jointly and severally liable to PureWorks.

These portions of the first amended complaint will be disregarded in the Court's plausibility analysis.

As to the second prong of Iqbal, whether the remaining well-pled facts present a plausible joint enterprise or alter ego claim, PureWorks' remaining factual allegations for this claim are that Tricor and Brady LTD are wholly-owned subsidiaries of Brady and that Brady and Tricor knew of PureWorks' PURESAFETY® trademark before May 13, 2008. Assuming all these facts to be true and construing the First Amended Compliant liberally in PureWorks' favor, the Court concludes that PureWorks has failed to state an alter ego or joint enterprise claim. Accordingly, Defendants' joint motion to dismiss this claim should be granted.

### c. Lanham Act Claims

PureWorks asserts claims for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a)(1)(A) respectively. "To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to

16

cause confusion." Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) (citing 15

U.S.C. § 1114(1)).

> Civil liability for unfair competition under the Lanham Act arises when:
>
> Any person who, in connection with any goods or services . . . uses in
> commerce any word, term, name, symbol, or device, or any combination
> thereof, or any false designation of origin, false or misleading description
> of fact, or false or misleading representation of fact, which--
>
>> (A) is likely to cause confusion, or to cause mistake, or to
>> deceive as to the affiliation, connection, or association of
>> such person with another person, or as to the origin,
>> sponsorship, or approval of his or her goods, services, or
>> commercial activities by another person.

15 U.S.C. §1125(a)(1)(A).

"In determining whether a likelihood of confusion exists, a court will typically weigh the

following eight factors: (1) strength of the senior mark; (2) relatedness of the goods or services;

(3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6)

likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8)

likelihood of expansion of the product lines." Hensley Mfg., 579 F.3d at 610 (citing Daddy's

Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 280 (6th Cir.1997)

and Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc., 326 F.3d 687, 694 (6th Cir.

2003)).

Here, Defendants argue that PureWorks has failed to sufficiently allege its Lanham Act

claims because Brady and Tricor did not "directly or independently" violate PureWorks'

trademark. (Docket Entry No. 57, at 10). Defendants specifically allege:

> The facts in the Complaint and the Amended Complaint both demonstrate that if
> any party has violated PureWorks' mark, it is Brady U.K. However, Brady U.K,
> is not a party to this litigation. Because PureWorks has not even stated a plausible
> claim for conspiracy involving Brady, Tricor, and Brady U.K. and has failed to
> plead any facts to plausibly demonstrate the actions of Brady U.K. can be imputed

17

> to Brady and/or Tricor, then there is no basis for imposing liability against Brady
> or Tricor under the Lanham Act.

Id. at 11 (emphasis added). Defendants also contend that PureWorks has not pled facts to support use in commerce. (Docket Entry No. 67).

PureWorks responds that it "enumerated direct conduct by Tricor (seeking to register PureWorks' "PURESAFETY" mark), and Brady (publicizing to its investor analysts in the U.S. its PURESAFETY business) to implicate these defendants in the unlawful use of the mark in the U.K.," and has alleged economic harm. (Docket Entry No. 64, at 7). Thus, PureWorks asserts that "[t]he facts alleged, admitted and/or of record therefore, directly or inferentially, give rise to a 'plausible suggestion' of a claim for trademark infringement." Id.

There are not legal conclusions presented as facts on the Lanham Act claims. Accepting the well-pled facts as true and construing PureWorks' first amended complaint liberally in favor of PureWorks, the Court concludes that PureWorks has stated plausible claims of trademark infringement and unfair competition. PureWorks' factual allegations are its ownership of the U.S. Trademark for PURESAFETY and its consistent use of this trademark in the United States and worldwide. PureWorks alleged that Tricor registered the trademark PURESAFETY in the United Kingdom, and that "Brady and/or one or more of its subsidiaries or affiliated companies" has been using the disputed trademark on a website to sell products that overlap with PureWorks' product offerings. PureWorks has alleged that its trademark and the trademark registered by Tricor and utilized on the website are similar, there are similar types of customers, and instances of actual confusion. Moreover, as stated above, the Court has concluded that PureWorks has stated a plausible claim of civil conspiracy. For these reasons, the Court concludes that there enough facts to state a claim to relief that is plausible on its face for

18

trademark infringement and unfair competition. Thus, Defendants' joint motion to dismiss PureWorks' Lanham Act claims should be denied.

### d. Unjust enrichment claim

Defendants next challenge PureWorks' claim for unjust enrichment as barred due to an express contract between PureWorks and Brady. (Docket Entry No. 57, at 11). Defendants argue that the appropriate claim as to Tricor is PureWorks' challenge to Tricor's trademark application in the United Kingdom. (Docket Entry No. 67, at 10).

PureWorks responds that its breach of contract claim extends only against Brady. Although Tricor was not a party to the NDA, the basis for its unjust enrichment claim against Tricor is "to the extent it has been unjustly enriched by its use of PureWorks' mark." (Docket Entry No. 64, at 8). PureWorks further contends that an unjust enrichment claim exists even with an existing contract, citing Robinson v. Durabilt Mfg. Co., 260 S.W.2d 174, 175 (Tenn. 1953).[4]

"Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist. Courts will impose a contractual obligation under an unjust enrichment theory when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation." Whitehaven Cmty. Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998) (citing Paschall's Inc. v. Dozier, 219 Tenn. 45, 407

---

[4] PureWorks cites Robinson v. Durabilt Mfg. Co, 260 S.W.2d 174, 175 (Tenn. 1953) for the contention that "the strict common-law 'rule has been so far modified that where any thing has been done from which the other party has received a substantial benefit, and which he has appropriated, a recovery may be had based upon such benefit." (citation omitted). Yet, Robinson involved the payment in quantum meruit for services rendered in excess of a contracted sum. PureWorks has not cited any legal precedent to suggest that quantum meruit relief is available when a party seeks breach of contract damages for related conduct.

S.W.2d 150, 154-55 (1966) (internal citation omitted)). See also S.K. Serv. v. FedEx Ground Package System, Inc., No. 1:08-CV-158, 2009 WL 2146211, at *8 (E.D. Tenn. July 14, 2009).

"The elements of an unjust enrichment claim are: 1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" Freeman Indus., LLC. V. Eastman Chemical Co., 172 S.W.3d 512, 525 (Tenn. 2005) (quoting Paschall's, Inc., 407 S.W.2d at 155)). "The plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract." Id. (citing Paschall's, Inc., 407 S.W.2d at 155 and Holloway, 973 S.W.2d at 596.)

Undisputedly the NDA is an enforceable agreement between PureWorks and Brady. PureWorks' breach of contract claim against Brady is for alleged "unauthorized and improper misappropriation and use of PureWorks' PURESAFETY® trademark." The unjust enrichment claim seeks compensation for related conduct. On these facts, the Court concludes that quantum meruit relief is unavailable to PureWorks against Brady. However, without a contract with Tricor, PureWorks can assert an unjust enrichment claim against Tricor given PureWorks' civil conspiracy allegation and the alleged unauthorized use and benefits from the unauthorized use of PureWorks' trademark. Accordingly, Defendants' motion to dismiss PureWorks' unjust enrichment claim should be denied as to Tricor and granted as to Brady.

### 2. **PureWorks' motion to dismiss Brady's third party complaint**

PureWorks' motion seeks dismiss of both counts of Brady's amended third party complaint under Fed. R. Civ. P. 12(b)(6).

### a. **Declaratory Judgment**

Brady seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 arguing that it has not infringed Plaintiff's PURESAFETY® trademark and not violated the Lanham Act.

PureWorks seeks dismissal on the grounds that the action is "redundant and will not resolve anything, given that Plaintiff has already brought suit alleging claims that give rise to Brady's cause of action." (Docket Entry No. 52, at 4). PureWorks asserts this claim is procedural maneuvering because "Plaintiff has already initiated another proceeding in the UK challenging Brady UK's entitlement to th[e] web domain [www.puresafety.co.uk]." Id. at 4-5.

Brady responds that it has sufficiently pled the elements necessary to maintain a declaratory judgment action: the grounds for subject matter jurisdiction, a short and plain statement of the claim, and demand for declaratory judgment relief. (Docket Entry No. 58, at 3). Brady asserts the declaratory action "would narrow at least one controversy in the pending litigation and would clarify the legal relations at issue." Id. at 5.

A federal declaratory judgment action extends a remedy only to cases "within [a court's] jurisdiction," and is available as a discretionary matter for the district court. 28 U.S.C. § 2201(a). "'[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.'" AmSouth Bank v. Dale, 386 F.3d 763, 784 (6th Cir. 2004) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995)). The Sixth Circuit has adopted the following test regarding when a district court should exercise jurisdiction over a declaratory judgment:

    (1) whether the judgment would settle the controversy;

    (2) whether the declaratory judgment action would serve a useful purpose in
        clarifying the legal relations at issue;

21

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

Dale, 386 F.3d at 785 (quoting Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000)).

Applying the first prong of Iqbal, the Court concludes that the following legal conclusions are presented as facts:

- Brady does not use the 'PureSafety' mark 'in commerce' or in 'connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.' Thus, Brady has not infringed any mark registered by PureWorks.

Thus, this portion of Brady's amended third party complaint is disregarded in Iqbal's plausibility analysis.

The Court next applies the second prong of Iqbal to determine if the remaining well-pled facts present a plausible claim for a declaratory judgment of non-infringement of the Lanham Act. The remaining facts related to this claim are:

- Brady itself does not use the PureSafety mark in the United States for any purpose.

- Brady has not made any attempt to register "PureSafety" as a trademark in the United States.

- Brady has not made any attempt to register the domain www.puresafety.co.uk.

- Brady Corporation, Ltd. registered the domain name www.puresafety.co.uk and the site is not operated and maintained by Brady.

These facts address the underlying non-infringement under the Lanham Act, not the appropriateness of Brady's declaratory judgment claim. Accepting as true the well-pled factual

22

assertions and construing the amended third party complaint liberally in favor of Brady, the Court concludes that the above-cited factors weigh against the Court using its discretion to entertain declaratory relief here because the requested judgment of non-infringement would not settle the controversy, there is litigation pending in this Court and in the United Kingdom, and there is an alternative remedy. Upon completion of discovery, the parties may file dispositive motions on their respective infringement or non-infringement of the Lanham Act. Accordingly, PureWorks' motion to dismiss Brady's declaratory judgment claim should be granted.

### b. Breach of Contract

PureWorks moves for dismissal of Brady's breach of contract claim because the disclosed information was not confidential and thus did not breach the NDA. (Docket Entry No. 52, at 6). Brady responds that it has properly stated a claim for breach of contract by pleading "the non-performance of the non-disclosure agreement amounting to a breach of that agreement." (Docket Entry No. 58, at 6). Brady alleges that the improper disclosure was contained in paragraphs 17 and 19 of the United Kingdom dispute. The relevant paragraphs in the United Kingdom dispute[5] read as follows:

> 17.    In the first part of 2008, the Complainant was approached by Tom Campbell (Category Manager at Brady Corporation) about the possibility of Brady Corporation getting involved in the Complainant's private reseller program. This could have led to Brady Corporation establishing a private label reseller site working with the Complainant and using the Complainant's products and services. This would necessarily have involved use of the Complainant's mark PURESAFETY – under the strap line - "Powered by PureSafety". Given the international reach of Brady Corporation, it was specifically contemplated that the venture would expand the use of the Complainant's PURESAFETY name both in the US and internationally, including in the UK.

---

[5] Brady did not provide the language at issue in its amended third party complaint or its pleading. However, PureWorks filed the United Kingdom documentation containing these paragraphs with its motion to dismiss. (Docket Entry No. 51, Attachment 1). The Court has only considered paragraphs 17 and 19 and has excluded the balance of this document from its consideration.

19.     The initial discussions with Mr Campbell took place in January 2008. They continued in April when Mr Campbell involved at least eight other people within Brady Corporation and secured high level management buy in from the Brady Corporation Legal, IT and Field Sales teams. On 10 June 2008, Mr Campbell continued his discussions with Ron Kirsch of the Complainant whilst at the ASSE conference in Las Vegas. On 20 June 2008, Mr Campbell liaised with Heather Scott at the Complainant to check a list of potential Brady Corporation prospective clients. On 7 July 2008, there was a conference call with Mr Campbell to discuss outstanding issues of support, pricing structure, commissions, administrative training and sales training. The last discussions on this were held on 13 August 2008 between Mr Campbell and Ms Scott. Ms Scott followed up on a number of occasions after that but Mr Campbell did not respond to these.

(Docket Entry No. 51, Attachment 1).

In Tennessee, breach of contract requires proof of "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." C & W Asset Acquisition, LLC v. Oggs, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007).

Here, Brady alleges the existence of an enforceable contract, the NDA, a specific disclosure by PureWorks in the United Kingdom dispute breaching the confidentiality provision of the NDA, and that "Brady will be irreparably harmed if PureWorks continues to disclose Confidential Information as much of this information would allow Brady's competitors insight into Brady's marketing plans and business development strategies."   Accepting as true the well-pled factual assertions and construing the amended third party complaint liberally in favor of Brady, as is required at this motion to dismiss stage of litigation, the Court concludes that sufficient facts are alleged to state a plausible breach of contract claim.  Thus, PureWorks' motion to dismiss this claim should be denied.

## C.  CONCLUSION

For the foregoing reasons, Defendants' joint motion to dismiss PureWorks' complaint under Fed. R. Civ. P. 12(b)(6) (Docket Entry No. 56) should be granted in part as to PureWorks'

claims for joint enterprise / alter ego and unjust enrichment claim against Brady, and denied in part as to PureWorks' claims for civil conspiracy, trademark infringement, unfair competition, and unjust enrichment claim against Tricor. Plaintiff PureWorks' motion to dismiss Brady's amended third party complaint under Fed. R. Civ. P. 12(b)(6) (Docket Entry No. 51) should be granted in part as to the declaratory judgment claim and denied in part as to the breach of contract claim.

An appropriate Order is filed herewith.

Entered on this the ___/6___ day of September, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge