IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PUREWORKS, INC. | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 3:09-cv-983 |
| | ) ) | JUDGE HAYNES |
| BRADY CORPORATION, and TRICOR DIRECT, INC. | ) ) ) | |
| Defendants | ) ) | |

## MEMORANDUM

Plaintiff PureWorks, Inc., a Delaware corporation headquartered in Franklin, Tennessee ("PureWorks"), filed its first amended complaint against Defendants[1] Brady Corporation, a Delaware corporation headquartered in Wisconsin ("Brady"), and Tricor Direct, Inc., a Delaware corporation and wholly-owned subsidiary of Brady with its principal place of business in Connecticut ("Tricor"), for trademark infringement under 15 U.S.C. § 1125(a)(1)(A), breach of contract, unjust enrichment, civil conspiracy, and joint enterprise/ alter ego liability. (Docket Entry No. 53). Before the Court is Tricor's motion to dismiss PureWorks' complaint for lack of personal jurisdiction (Docket Entry No. 10), to which PureWorks responded (Docket Entry No. 18), and Tricor filed a reply (Docket Entry No. 21). Tricor argues that the Court lacks personal jurisdiction given Tricor's limited contacts with Tennessee and that venue is improper in this Court. (Docket Entry No. 10). Alternatively, Tricor asserts that the action should be transferred to the District Court for Connecticut under 28 U.S.C. § 1404.

---

[1] In its first amended complaint, PureWorks amended its original complaint that named Brady, Tricor, and Brady Corporation, LTD, an United Kingdom corporation and wholly-owned subsidiary of Brady.

1

PureWorks responds that the Court has personal jurisdiction over Tricor under an alter ego theory of liability, conspiracy theory of jurisdiction, and that Tricor is "otherwise subject to this Court's jurisdiction" based upon its contacts with the state. PureWorks contends that venue is proper under 28 U.S.C. § 1391(b) and there is no basis to transfer the case under 289 U.S.C. § 1404.

For the reasons set forth below, the Court concludes that personal jurisdiction exists over Tricor and Tricor's motion to dismiss under Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(3) should be denied. The Court further concludes that Tricor's request to transfer the action should be denied.

### A. ANALYSIS OF THE MOTION

According to the proof on this motion, Tricor admits that it "distributes catalogs and engages in direct marketing" to consumers within the state and has a "direct marketing business within the state." (Docket Entry No. 11, at 2, 5). PureWorks has not alleged and there is no evidence to suggest that Tricor is registered in Tennessee or has an agent or employees in Tennessee.

PureWorks has submitted the declaration of Ronald Kirsch, Vice President of Business Development for PureWorks, who negotiated the NDA on behalf of PureWorks. (Docket Entry No. 19). Kirsch's declaration states, in pertinent part:

> 5. Before the NDA was executed, I also had discussions with a representative from Tricor Direct, Inc., ("Tricor"), who was also aware that PureWorks is headquartered in Tennessee."
>
> 6. Tricor does business as "Seton Identification Products," and operates a website found at http://www.seton.com/. To the best of my knowledge, this business has been operating throughout the United States (not to mention globally) for many years.

\* \* \*

8. Thaddeus Stankowski serves as in-house counsel for Brady Corporation and was also listed as the contact person for Tricor's trademark application . . . [.]"

Id.

In its pleading, PureWorks alleges that Tricor's website is interactive and permits Tennessee consumers to purchase products. (Docket Entry No. 18). Specifically, PureWorks alleges that:

> Tricor, doing business as 'Seton Identification Products,' operates an interactive website and offers a variety of products that may be purchased by Tennessee residents. (see http://www.seton.com/; Kirsh Decl, ¶ 6). The website permits customers (apparently from any location) to shop on-line, to contact Tricor and "sign up for email", and to engage in a "Live Chat."

Id. at 12. Tricor has not contested these allegations.

### B. CONCLUSIONS OF LAW

Upon a motion to dismiss for lack of personal jurisdiction, a District Court may rely on the submission of affidavits or conduct on evidentiary hearing under Rule 12(d) of the Federal Rules of Civil Procedure. Welsh v. Gibbs, 631 F.2d 436, 438 (6th Cir. 1980) (cert. denied 450 U.S. 981 (1981). If an evidentiary hearing is not held, then the Court must view the pleadings and affidavits in the light most favorable to the plaintiff. Id. at 439. Here, there has not been an evidentiary hearing[2] and the pleadings have not raised "issues of credibility or disputed issues of fact." Id. Accordingly, PureWorks need "only to make a prima facie case of jurisdiction, that is, [it] need only 'demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.'" Id. at 438 (citations omitted). See also Third Natl. Bank v. WEDGE Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989) (cert. denied, 493 U.S. 1058).

---

[2] The Court held a status conference in February 2010 where jurisdiction was discussed, but no evidence was presented on this issue.

3

In diversity actions, the Sixth Circuit "has articulated a two-step inquiry to determine whether a federal district court sitting in a diversity-of-citizenship case can exercise personal jurisdiction over a defendant: (1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." Brunner v. Hampson, 441 F.3d 457, 463 (6th Cir. 2006) (citation omitted). See also Pickens v. Hess, 573 F.2d 380, 385 (6th Cir. 1978).

Tennessee's Long Arm Statute subjects nonresident parties to the jurisdiction of state and federal courts in Tennessee on any claim arising from:

> (1) The transaction of any business within the state;
>
>    *  *  *
>
> (5) Entering into a contract for services to be rendered or for materials to be furnished in this state;
>
> (6) Any basis not inconsistent with the constitution of this state or of the United States;
>
>    *  *  *
>
> (b) "Person," as used herein, includes corporations and all other entities which would be subject to service of process if present in this state.

Tenn. Code. Ann. §§ 20-2-214(a) and (b). The Tennessee long arm statute is construed to grant jurisdiction only to the limits of Due Process Clause of the Fourteenth Amendment. Pickens, 573 F.2d at 385.

There are two types of personal jurisdiction: "specific jurisdiction" and "general jurisdiction." As the Supreme Court explained: "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414, fn. 9 (1984). General jurisdiction involves

4

contacts of "continuous or systematic nature." WEDGE Group, Inc., 882 F.2d at 1089. When a State exercises personal jurisdiction over a defendant's contacts with the forum, the State is exercising "specific jurisdiction" over the defendant. Id.

In Asahi Metal Indus. Co., Ltd. . v. Super. Ct. of Cal. Solano, 480 U.S. 102, 112 (1987), the Supreme Court concluded that a Japanese corporation's "placement of a product in stream of commerce, without more" was insufficient for the exercise of in personam jurisdiction over the Japanese corporation. The Supreme Court reaffirmed its earlier holding that minimum contacts must be established by evidence of some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of the forum's state laws. Id. at 109. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated contacts,'" or of the "unilateral activity of another party or a third person.'" Burger King Corp v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations omitted).

In Burger King, the Supreme Court outlined the factors for determining whether the District Court possesses personal jurisdiction.

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties or relations." By requiring that individuals have "fair warning" that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," the due process clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where the conduct will and will not render them liable to suit."

> Where a forum seeks to asserts specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities as resident of the forum, and the litigation results from the alleged injuries that "arise out of or relate to" those activities . . . [.]"

5

Id. at 471-73 (citations and footnotes omitted). To be sure, "some single or occasional acts related to the forum" can support a finding of personal jurisdiction, but not if "'their nature and quality and the circumstances of their commission' create only an 'attenuated' affliction with the forum." Id. at 475, n. 18 (citation omitted). Yet, "[e]ven when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation." Helicopteros Nacionales de Columbia, 466 U.S. at 414 (citations and footnote omitted).

The Court first considers whether there is general jurisdiction over Tricor. That is, whether Tricor's contacts with Tennessee are of "such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." Bird. v. Parsons, 289 F.3d 865, 873 (6th Cir. 2002) (quoting WEDGE Group, Inc., 882 F.2d at 1089).

As noted in Sony/ATV Music Publ'g LLC. V. CAVS USA, Inc., No. 3:08-0265, 2009 WL 2177110, *3 (M.D.T.N. July 21, 2009), the Sixth Circuit has identified "differing levels of interactivity with Internet websites."

> In order to determine whether an operator of a website purposefully availed himself of the forum state, the Court looks at the website's level of interactivity.... There are generally three levels of interactivity of websites, including: (1) passive sites that only offer information for the user to access; (2) active sites that clearly transact business and/or form contracts; and (3) hybrid or interactive sites that allow users to "exchange information with the host computer."

Id. at * 4 (ellipsis in original) (quoting See, Inc. v. Imago Eyewear, Ltd., 167 Fed. Appx. 518, 522 (6th Cir. 2006)) . "Purposeful availment is shown 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state' and welcomes such

6

interaction." CAVS USA, Inc., 2009 WL 2177110 at *4 (quoting Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 890 (6th Cir. 2002)).

In Bird v. Parsons, 289 F.3d 865 (6th Cir. 2002), the Sixth Circuit considered whether maintaining an unrestricted website subjected a nonresident company to general personal jurisdiction. The Sixth Circuit addressed whether the allegation that "4,666 Ohio residents have registered domain names with Dotster, as well as the presence of Dotster's website on the Internet, constitutes sufficient 'minimum contacts' with Ohio such that the exercise of jurisdiction over the Dotster defendants does not offend 'traditional notions of fair play and substantial justice.'" Id. at 872 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The Sixth Circuit held that maintenance of "a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction," and, likewise, a website that simply enables a company to do business with residents does not permit general jurisdiction. Id. at 874. In holding there was no general jurisdiction, the Sixth Circuit noted that the plaintiff had not alleged that the defendant company had an office or bank account in Ohio, was registered in Ohio, visited Ohio, or directed its operations from the state. Id. at 873. The Sixth Circuit emphasized: "We also find it significant that, unlike direct marketing, registrants initiate the contact with Dotster." Id. at 874 (emphasis added).

In First Tenn. Nat'l. Corp. v. Horizon Nat'l Bank, 225 F.Supp.2d 816, 820-21 (W.D. Tenn. 2002), the court held that the maintenance of an alleged "highly interactive" website was "definitely an insufficient basis upon which to base general jurisdiction." (citing Bird, 289 F.3d at 874). The interactive website permitted users to complete mortgage applications, receive emails, use a "rate tracker" service, complete "on line testimonials," calculate mortgage payments, get advice, advertised approval to lend in "ALL 50 States," and stated that "Tennessee

7

is included in a list of states to which Horizon directs its business activities." Id. Yet, the website was the only basis asserted by the plaintiff to justify general jurisdiction.

In Energy Automation Sys., Inc. v. Xcentric, Inc., No. 3:06-1079, 2007 WL 1557202, * 7 (M.D. Tenn. May 25, 2007), a court in this district considered whether "the defendant's operation of its website and its inclusion of Tennessee businesses and individuals on that website justifies the exercise of general personal jurisdiction." Applying Bird and First Tenn. Nat'l. Corp., the court held that operating the website, without more, did not provide general jurisdiction. Id. In so holding, the court stated:

> Although the plaintiff alleges various forms of solicitation, promotion, and advertisement, it is important to note that those allegations-and the evidence in the record- are limited to activities that took place on the website itself. The defendants have not sent agents to Tennessee or promoted services directly to Tennesseans in any way that is meaningfully distinct from the daily operation of the website. . . As in Bird, the plaintiff has not shown evidence of "direct marketing" of their services in Tennessee and, instead, the evidence indicates that potential customers have "initiate[d] contact" with RipoffReport.com.

Id. (emphasis added).

In Morris Aviation LLC v. Diamond Aircraft Indus., Inc., No. 3:09-cv-644, 2010 WL 2961183 (W.D. Ky. July 26, 2010), the court held there was no general jurisdiction after concluding that "none of Diamond's contacts with Kentucky is especially substantial – let alone "continuous and systematic."" Id. at * 4. There, the defendant had the following contacts with Kentucky: (1) defendant designated an unaffiliated authorized distributor and certified repair center to serve the state; (2) there were ten aircraft manufactured by defendant assigned to Kentucky, but "no evidence or even allegation regarding the sales . . .to show that [defendant] directed its efforts to Kentucky"; (3) defendant communicated with Kentucky residents in paper and email regarding products, but "the only communications discussed by the plaintiffs are just those involved in this case and do not necessarily imply and prior dealings in Kentucky on

8

Diamond's part;" and (4) defendant maintained a website with testimonials that would not allow customers to initiate business. Id. at *3-4.

Here, PureWorks has alleged that Tricor maintains an interactive website that permits Tennessee customers to transact business, email, and engage in "live chat." PureWorks has also alleged that Tricor has been operating its business throughout the United States for many years. Tricor acknowledges its distribution of its catalogs in Tennessee and its direct marketing to Tennessee consumers. Tricor contends that these contacts are insufficient for general jurisdiction citing its lack of an office, registered agent, and employees in Tennessee. (Docket Entry No. 11, at 5). In a word, unlike the defendants in Bird, First Tenn. Nat'l. Corp, and Xcentric, Tricor has initiated contact with consumers in Tennessee through its direct marketing business, a business that is alleged to have been operating for many years. As a result, Tricor's contacts with Tennessee are not limited to the maintenance of an unrestricted interactive website. Unlike the defendant in Morris Aviation, Tricor's communications with consumers are not alleged to be limited to this action. Thus, the Court concludes that Tricor has sufficient contacts with Tennessee of a continuous or systematic nature such that due process would not be offended through the Court's exercise of personal jurisdiction over Tricor. Helicopteros Nacionales de Columbia, 466 U.S. at 414. Because general jurisdiction exists over Tricor, the Court deems moot PureWorks' specific jurisdiction, alter ego and conspiracy theory jurisdictional arguments.

As to venue, Tricor asserts that venue is improper under Rule 12(b)(3) because "all defendants are not residents of the same state, no substantial part of the events giving rise to the action occurred in Tennessee and the action could have been brought in another district." (Docket Entry No. 11, at 9). PureWorks responds that "at least the second aspect of [the]

9

standard [of 28 U.S.C. § 1391(b)] is satisfied, because the injury is deemed to have occurred in this judicial district." (Docket Entry No. 18, at 13).

PureWorks asserts jurisdiction under 28 U.S.C. § 1331 and brings this action under the Lanham Act, 15 U.S.C. § 1501. Under 28 U.S.C. § 1391(b), in an action "wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." Additionally, "[a] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

"[B]ecause a plaintiff whose trademark has been violated potentially suffers economic harm as a result of the defendant's actions, the injury occurs both in places where the plaintiff does business and in the state where its primary office is located." Bird, 289 F.3d at 876 (citing Panavision Int'l, L.P. v. Toeppen, 289 F.3d 1316, 1322 (9th Cir. 1998) and Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1127 (W.D.Pa.1997). PureWorks is headquartered in Franklin, Tennessee. The Court has found personal jurisdiction over Tricor. Thus, Court concludes that venue is proper in this district under 28 U.S.C. § 1391(b) and Defendant Tricor's motion dismissal for improper venue pursuant to Rule 12(b)(3) should be denied. The Court also
10

notes that it previously held that personal jurisdiction exists over Defendant Brady and Brady has stated that venue is proper in this District.[3] (Docket Entry No. 47, at 2).

As to its alternate transfer of jurisdiction under 28 U.S.C. § 1404, Tricor argues as follows:

> "PureWorks has not pleaded sufficient facts to demonstrate that the case properly lies in this venue. First, there is no contract between Tricor and Pureworks. . . The witnesses that are likely to be called in this case reside primarily in the United Kingdom, Wisconsin and Connecticut. . . Tennessee has little interest in resolving a dispute between foreign corporations and a United Kingdom corporation, which occurred (if at all) in the United Kingdom and only tangentially implicates Tennessee law."

(Docket Entry No. 11, at 11).

PureWorks responds that transfer is inappropriate because Defendants have made no attempt to satisfy their burden of specifying key witnesses or testimony justifying transfer. (Docket Entry No. 18, at 13).

Under 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The burden of showing the need to transfer is on Tricor and is "considerable: 'Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Big G. Exp., Inc. v. Leviton Mfg. Co., No. 3:08cv318, 2008 WL 2400947 at *2 (M.D.Tenn. June 10, 2008) (citation omitted).

In its determination regarding transfer of an action, the Court balances the following considerations:

> (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) relative

---

[3] In its third party complaint, Brady states: "Based upon the Court's prior rulings venue is appropriate in this judicial district."
11

advantages and obstacles to a fair trial; (4) the possibility of the existence of questions arising in the area of conflict of laws; (5) the advantage of having a local court determine questions of law; and (6) all other considerations of practical nature that make a trial easy, expeditious, and economical.

Id. at 2 (quoting S. Elec. Health Fund v. Bedrock Servs., No. 3:02cv309, 2003 WL 24272405 (M.D.Tenn. Jul. 23, 2003) (citations omitted)).

Here, the only factor that Tricor has addressed is the second element, accessibility of witnesses and other sources of proof, stating: "The witnesses that are likely to be called in this case reside primarily in the United Kingdom, Wisconsin and Connecticut" and the injury "occurred (if at all) in the United Kingdom." Yet, "[t]he party seeking the transfer <u>must clearly specify the key witnesses to be called</u> and must make a general statement of what their testimony will cover . . . If a party has merely made a general allegation that witnesses will be necessary, <u>without identifying them and indicating what their testimony will be, the application for transfer will be denied</u>." Big G. Exp., Inc., 2008 WL 2400947 at *2 (emphasis in original) (quoting Reynolds v. Arowood, 2007 U.S. Dist. LEXIS 61785, at *5-*6 (M.D.Tenn. Aug. 21, 2007)) (quoting Bacik v. Peek, 888 F.Supp. 1405, 1415 (N.D.Ohio 1993).

Here, Tricor's pleading does not identify the number or names of necessary witnesses in Connecticut or the substance of testimony. By contrast, PureWorks has identified its two key representatives, Thomas Gaudreau and Ronald Kirsch, who are in Franklin, Tennessee. (Docket Entry No. 19, Kirsch declaration, ¶ 9). Tricor has also not identified proof that is available in Connecticut and not in Tennessee. Thus, Tricor's pleading is not sufficient to justify transfer of the action.

As to the other factors, PureWorks selected Tennessee as the forum that is also its principal place of business. Defendant Brady, Tricor's parent company, has filed a third party

12

complaint in this action. The NDA between Brady and PureWorks identifies Tennessee as the governing law in the choice of law provision. Tricor has failed to meet its burden of demonstrating that the balance of interests in favor of transfer is strongly in its favor. Accordingly, Tricor's request to transfer under 28 U.S.C. § 1404 should be denied.

### C. CONCLUSION

For the foregoing reasons, Tricor's motion to dismiss (Docket Entry No. 10) should be denied.

An appropriate Order is filed herewith.

Entered on this the 20th day of September, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge